UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAURICE J. SALEM,

        Plaintiff,                        No. 05-CV-71154

vs.                                          Hon. Gerald E. Rosen

KYM L. WORTHY, in her capacity as
Wayne County Prosecutor and,
MICHAEL NESHEWAT,

        Defendants.
_____/

OPINION AND ORDER DENYING PLAINTIFF'S MOTION
MOTION FOR PRELIMINARY INJUNCTION AND
<u>DISMISSING PLAINTIFF'S COMPLAINT, WITH PREJUDICE</u>

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on       May 11, 2005      

PRESENT:   Honorable Gerald E. Rosen
                    United States District Judge

I.  <u>INTRODUCTION</u>

The above captioned action is presently before the Court on Plaintiff's Motion for Preliminary Injunction. Plaintiff Maurice Salem (f/k/a Maurice Neshewat) seeks an order enjoining his brother, Defendant Michael Neshewat, from enforcing a money judgment obtained in New York State Court via the sheriff's sale of a house owned by Plaintiff at 7

1

Gellatly Drive in Wappingers Falls, New York.[1] The Court issued an Order to Show Cause directing the parties to respond to Plaintiff's Motion and they have complied. Defendant has replied to Plaintiff's Motion.[2] Having reviewed and considered the parties' respective briefs and supporting documents, and having heard oral argument on this matter on April 12, 2005, the Court is now prepared to rule on this matter. This Opinion and Order sets forth the Court's ruling.

## II. FACTUAL BACKGROUND

This decades-old legal feud between the Neshewat brothers has once again manifested itself in this Court. The background facts relevant to this motion are as follows.[3]

---

[1] The sheriff's sale was scheduled to take place on April 13, 2005. However, on April 8, 2005, the Seventh Circuit Court of Appeals ordered a temporary stay of an order dismissing a Chapter 13 bankruptcy action filed by Plaintiff in the Northern District of Illinois pending resolution of Plaintiff's contemporaneously filed Motion to Stay Pending Appeal. *See In re Salem*, No. 05-1914 (7th Cir., Apr. 8, 2005 Order). The New York property apparently was listed as an asset in the Northern District of Illinois bankruptcy proceeding and the subsequent dismissal of the bankruptcy action left the property unprotected and subject to execution by judgment creditors.

[2] Although in his Complaint, Plaintiff has alleged claims against both his brother and Wayne County Prosecutor Kym Worthy, the injunctive relief sought by Plaintiff to block the sheriff's sale of his property does not involve the Prosecutor. However, Plaintiff has requested that the Court order the Prosecutor to prosecute his brother, and Defendant Worthy has responded to this aspect of Plaintiff's action.

[3] The facts have been gleaned not only from Plaintiff's pleadings but also from the opinions of various courts which have decided material issues involved in this dispute. *See generally*, *Neshewat v. Neshewat*, 253 A.D.2d 801, 677 N.Y.S.2d 508 (2d. Dep't 1998); *Neshewat v. Salem*, E.D. Mich. No. 96-73384 (E.D. Mich., Nov. 7, 1997 Opinion and Order), *aff'd*, 173 F.3d 357 (6th Cir. 1999); *Salem v. Paroli*, 260 B.R. 246 (S.D.N.Y. 2001), *aff'd*, 79 Fed. Appx. 455 (2d Cir. 2003); *In re Salem*, 290 B.R.479 (S.D.N.Y. 2003), *aff'd*, 94 Fed. Appx. 24 (2d Cir. 2004); *Neshewat v. Salem*, No. 02-9807 (S.D.N.Y., Apr. 8, 2005 Opinion and Order); *In re Salem*, No. 04-18739 (Bankr. N.D. Ill.

In July of 1996 Plaintiff Maurice Salem ("Salem") sued his brother Dr. Michael Neshewat ("Neshewat") in Dutchess County New York Supreme Court to recover damages arising from the ownership of a Mercedes automobile. This now judicially infamous automobile has been the epicenter of the bad blood between the brothers throughout a prolonged and tenuous struggle beginning with the death of their mother and the disposition of her estate.

In 1989, Nader Neshewat, one of Plaintiff's and Defendant's brothers, filed a petition in Dutchess County, New York for conservatorship over their ailing mother, Leha Neshewat, who resided with Plaintiff Maurice Salem. Plaintiff, Defendant and their other brothers and sisters were named as respondents in the conservatorship proceeding. Plaintiff and Defendant were accused of having taken control of their mother's assets without authorization. An independent conservator was appointed and directed to collect approximately $445,000 from Plaintiff's family members. Before all of the assets were collected, Mrs. Neshewat died and Maurice was appointed executor and sole beneficiary of his mother's estate. Among the assets of Mrs. Neshewat's estate was a 1989 Mercedes Benz.

The Mercedes apparently was at one time in Maurice's possession; however, it later ended up in the possession of Defendant Michael Neshewat who, by 1990, had moved to Michigan. In 1990, Michael reported the car stolen to his insurance company but three years later, it was discovered in the possession of Maurice Salem's wife. The insurance company

---

2004); *In re Salem*, No. 04-07823 (N.D. Ill. 2005); *In re Salem*, No. 05-1914 (7th Cir., Apr. 8, 2005 Order).

then filed insurance fraud charges against Neshewat. Neshewat agreed to pay $40,000 restitution to the insurance company pursuant to a pretrial diversion agreement and the charges were dropped. Thereafter, a series of state and federal actions between the brothers ensued.

On July 9, 1996, Plaintiff Salem sued Michael in New York Supreme Court seeking damages relating to his ownership of the car. Salem's suit was assigned case number 002966/96. Michael responded in kind by filing his own suit against Salem on July 17, 1996. Neshewat's suit, assigned case number 003277/96, alleged fraud, abuse of process, malicious prosecution, libel and slander, seeking damages on the basis that Plaintiff was <u>not</u> the owner of the car.

Apparently feeling that the Dutchess County suit may not provide him the relief he sought, on July 26, 1996, Neshewat filed a similar suit against Salem in this Court (see E.D. Mich. No. 96-73384) alleging breach of contract, unjust enrichment, fraud and misrepresentation, and injurious falsehood. This case was dismissed on November 7, 1997 on statute of limitations and collateral estoppel grounds, and the Sixth Circuit affirmed.[4]

By September of 1996 Salem had not answered Neshewat's Dutchess County Supreme Court complaint. (Case 003277/96) Neshewat, therefore, moved for entry of

---

[4] This Court dismissed Neshewat's breach of contract, unjust enrichment, and fraud and misrepresentation claims on statute of limitations grounds and the claim of injurious falsehood under collateral estoppel. The Sixth Circuit affirmed the decision on the first three claims, and affirmed the fourth on slightly different grounds, holding that Salem's allegedly false statements were privileged. *See Neshewat v. Salem*, 173 F.3d 357 (6th Cir. 1999).

4

default on September 21, 1996. Eleven days later, on October 2, 1996 Salem filed an affidavit in opposition to Neshewat's Motion for Default. Apparently, this filing was not received by the assigned judge.[5] Consequently, on November 6, 1996 a default judgment was entered against Salem. At some point in time soon thereafter, Salem's missing affidavit in opposition to Neshewat's Motion for Default was received by the court, and on June 24, 1997, Salem's default was vacated.

Neshewat appealed the order vacating the entry of default against Salem on September 19, 1997. While Neshewat's appeal was pending, on July 10, 1998, the Dutchess County Court dismissed both Salem and Neshewat's suits on the basis of res judicata.

Approximately two months later, the New York Appellate Division reversed the Dutchess County Court's order vacating the default judgment and reinstated Salem's default concluding that Salem "failed to demonstrate a reasonable excuse for his delay in appearing and answering." *See Neshewat v. Neshewat*, 253 A.D.2d 801, 677 N.Y.S.2d 508 (2d Dep't 1998). Salem immediately filed, and was granted, a motion to re-argue. His brother, Michael, cross-moved to renew and re-argue. Michael's motion was granted, and the default judgment against Salem was reinstated on March 16, 1999. An inquest was immediately scheduled to determine damages.

However, before the damages hearing was held, Plaintiff filed an action in the U.S.

---

[5] Plaintiff claimed that the Clerk of the Court intentionally failed to deliver the affidavit to the assigned judge. *See Salem v. Paroli*, 260 B.R. 246, 250 (S.D.N.Y. 2001), *aff'd,* 79 Fed. Appx. 455 (2d Cir. 2003).

District Court for the Southern District of New York challenging the Dutchess County Court's reinstatement of the default judgment and requesting a stay of the damages inquest. The District Court denied the stay and placed the case on Suspense Order pending Plaintiff's exhaustion of his state court remedies. *See Salem v. Paroli, supra*, 260 B.R. at 251.

The state court damages inquest was held on April 26, 1999, and on May 7, 1999, the state court held Plaintiff liable on the malicious prosecution and abuse of process claims for damages amounting to $166,884.86. *Id.* Salem immediately filed an appeal.

On February 22, 2000, Plaintiff received a Notice of a Petition filed by his brother, Michael, for a hearing set for February 28, 2000 in the Dutchess County Court. The petition sought to enforce the default judgment and direct the sale of Plaintiff's house. Plaintiff failed to answer the petition as required under New York's court rules, and on April 3, 2000, the state court granted Defendant's petition.

Plaintiff thereafter filed for bankruptcy in the Southern District of New York, and in the bankruptcy action, attempted to discharge the judgment entered against him. Neshewat immediately initiated an adversary proceeding in bankruptcy court to have the judgment declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). The bankruptcy court conducted a trial and found that Neshewat had proven by a preponderance of the evidence that Salem caused willful and malicious injury to him, and, therefore, concluded that the debt was non-dischargeable. *See In re Salem*, 290 B.R. 479 (S.D.N.Y. 2003). Salem then appealed to the District Court for the Southern District of New York, which affirmed the bankruptcy court's determination of non-dischargeability on March 5, 2003. *Id.* The District

Court's decision was subsequently affirmed by the Second Circuit Court of Appeals. *See, In re Salem*, 94 Fed. Appx. 24 (2d Cir. 2004).

Meanwhile, during the pendency of Salem's bankruptcy, on June 20, 2000, the New York Court of Appeals denied Salem's appeal of the $166,884.86 judgment entered against him.

With the intention of enforcing his right as a judgment creditor, on November 20, 2002, Neshewat filed suit in the Supreme Court for Dutchess County, New York, seeking to set aside two conveyances made by Salem. Neshewat asked that the court declare that Salem fraudulently conveyed his interest in the real property at 7 Gellatly Drive to himself and his wife, on May 20, 1999 and that he fraudulently conveyed the 1989 Mercedes Benz, which was in his name alone, to his wife on July 23, 1999. Neshewat alleged that these conveyances were done immediately after entry of the state court's order granting the monetary judgment following the damages inquest. Neshewat requested that the conveyances be set aside and returned to their pre-conveyance status, i.e., with ownership in Salem's name alone, so that the judgment could be enforced against him.

The case was removed by Salem to federal court (Southern District of New York) on December 12, 2002. Along with the Notice of Removal, Salem filed a counterclaim seeking to set aside the $166,884.86 default judgment entered against him. Salem argued in his counterclaim that the New York state court default judgment was entered because of false and fraudulent statements made by Neshewat.

On April 8, 2005, U.S. District Judge William Conner entered an Opinion and Order

dismissing Salem's counterclaim on res judicata grounds. Judge Conner held that Salem's action to set aside the $166,994.86 default judgment was barred because this is exactly the same relief that Salem sought in his previous action, *Salem v. Paroli, supra*

> In that prior lawsuit between the same parties, [Salem] sought vacatur of the default judgment entered against him in New York State Supreme court on the ground of fraud. This Court entered a judgment dismissing that action and the judgment was affirmed by the Second Circuit.[6] In the present counterclaim, [Salem] seeks identical relief on identical grounds, however differently he has attempted to frame the issue. Consequently, [Salem]'s counterclaim is dismissed on the basis that it is barred by *res judicata*.

*See* 4/8/05 Opinion and Order, pp. 8-10.[7]

The court also sanctioned Salem pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 by enjoining him from filing or prosecuting, without leave of the court, any further actions or proceedings in the federal courts. *Id.* at 32-33. The court explained:

> In the present case, we have little difficulty concluding that the circumstances necessitate some restriction on future litigation by Salem. Salem has instituted numerous lawsuits and counterclaims against [Michael Neshewat] and [Neshewat]'s counsel which have no merit and which needlessly waste precious judicial resources in addition to harassing [Neshewat] and his counsel. while we recognize that the imposition of monetary sanctions might be warranted, it is unlikely that such sanctions would successfully curb future litigation by Salem as he appears to be nearly judgment-proof. Salem has still

---

[6] In *Salem v. Paroli*, the court dismissed Plaintiff's action on *Rooker-Feldman* grounds.

[7] The court also granted summary judgment in favor of Michael Neshewat and determined that the transfers of the property at 7 Gellatly Drive and the Mercedes were fraudulent conveyances, 4/8/05 Opinion and Order, p 17. The court further held that to the extent that the conveyances could not be set aside, both Salem and his wife are liable in money damages up to the value of the default judgment entered against Maurice Salem, but limited to the extent of the value of the transferred assets. *Id.* at 18.

>   not paid the default judgment entered against him in 1999, and in the current lawsuit in which [Neshewat] sought to set aside a fraudulent conveyance frustrating collection of this judgment, Salem has merely repeated his previous efforts to obtain vacatur of the default judgment. Therefore, because monetary sanctions would be insufficient to deter future litigation, an injunction is warranted. However, we are mindful that the injunction must be fashioned carefully to avoid prejudicing Salem's legitimate due process rights.
>
>   Accordingly, Salem is hereby enjoined from filing or prosecuting, without leave of this Court, further actions or proceedings in the federal courts against Neshewat or his counsel Paul J. Goldstein and Goldstein & Metzger, LLP seeking review or relief from the default judgment entered against him in New York State Supreme Court. However the injunction does not extend to state courts because "[a]buse of state judicial processes is not *per se* a threat to the jurisdiction of Article III courts and does not *per se* implicate other federal interests.

4/8/05 Opinion and Order, pp. 32-33 (citations omitted).

Obviously, Plaintiff did not have the benefit of Judge Conner's ruling when he filed his Complaint and Motion for Preliminary Injunction in this case on March 23, 2005. However, Judge Conner's order does enjoin Plaintiff from "filing ***or prosecuting*** further actions or proceedings in the federal court***s*** [plural]. . . seeking review or relief from the default judgment entered against him." This is precisely what Plaintiff seeks in this action. Salem seeks in the instant action to prevent enforcement of the default judgment. The interests of comity dictate that this Court should defer to Judge Conner and not entertain this suit unless Judge Conner grant him leave to proceed.

But even if the Court were to entertain Plaintiff's Motion, for the reasons discussed below, it must be denied.

### III. DISCUSSION

In the instant Motion, Plaintiff Salem seeks to enjoin the enforcement of the New York state court judgment claiming that, it was as a result of the Pretrial Diversion Agreement which his brother Michael Neshewat entered into with regard to the insurance fraud charges here in Michigan that Neshewat was able to sue Salem for malicious prosecution in New York and obtain the judgment against him which has led to the sheriff's sale of his house.  Salem contends that because this Court determined in 1997 that Neshewat's pretrial diversion agreement on the insurance fraud charges (regarding the Mercedes Benz) should operate like a plea or conviction to bar, under principles of collateral estoppel, a subsequent civil action for damages for malicious prosecution, false arrest or defamation, the New York state court erred in allowing his brother to proceed against him with his claim of malicious prosecution.  His premise here appears to be that because his brother used the pretrial diversion agreement "as a sword and a shield" he should be found to have breached that agreement, which, he posits, would render the agreement "null and void" and, therefore, would establish "new evidence" that would extinguish the malicious prosecution action and require the vacating of the New York judgment and the bankruptcy court's non-dischargeability decision.  Salem apparently believes that this Court would be inclined to overrule the New York state court and the Bankruptcy Court for the Southern District of New York because those courts did not follow this Court's ruling.

PRELIMINARY OBSERVATIONS

As an initial matter, the Court makes two observations with regard to Plaintiff's argument. First, the Sixth Circuit did not affirm this Court on the preclusive effect of pretrial

10

diversion.  *See Neshewat v. Salem*, 173 F.3d 357 (6th Cir. 1999).  Rather, the Sixth Circuit found that Plaintiff failed to make out the elements of injurious falsehood that are required under Michigan law.  *Id.*  Therefore, since the appellate court declined to give Neshewat's pretrial diversion agreement preclusive effect, Salem's argument that the New York court erred in not following this Court's ruling and not giving preclusive effect to the pretrial diversion is on shaky footing to begin with.

The second observation that the Court makes is that the New York state court's decision finding Salem liable for both abuse of process and malicious prosecution -- which the bankruptcy court adhered to -- ***was not solely predicated upon Salem's testimony in the Michigan insurance fraud matter.***  Rather, the New York court was specifically persuaded by the numerous actions filed and/or prosecuted by Salem against his brother in various venues which the court found satisfied the elements of abuse of process and malicious prosecution ***under New York law***:

> There are (3) innate elements found in abuse of process: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective.  *Curiano v. Suozzi*, 63 NY2d 113, 116.  The process used must involve "an unlawful interference with one's person or property."  *Curiano v. Suozzi*, supra, p. 116 quoting *Williams v. Williams*, 23 NY2d 592, 596.
>
> It is uncontradicted that defendant [Salem] *pro se* commenced a civil lawsuit in Dutchess County Supreme Court (Index 5497/90) in November, 1990 naming the plaintiff [Neshewat] a co-defendant. Specific charges against him were stealing title to the 1989 Mercedes Benz automobile, forgery and fraudulent transfer of title to the vehicle to himself, preparation of a false medical report, trespass, assault, harassment, making false reports to the police and conspiracy to inflict emotional distress as well as physical harm.  All of

11

the charges were dismissed in a judgment dated October 12, 1995 and entered October 26, 1995.

On February 16, 1995, [Neshewat] was arrested in Michigan for what amounts to insurance fraud regarding the Mercedes Benz. Neshewat achieved a settlement with the insurance company by paying $40,000.00 in restitution. The criminal court dismissed the charges "without prejudice" on February 5, 1996. . . .

[Salem] admitted he traveled to Michigan and testified in the criminal proceeding but denied being its catalyst. That assertion is unworthy of belief. There could only be one source and initiator, namely, the defendant [Salem]. Truth is so precious that some people use it sparingly.

It is uncontroverted that [Salem]'s proceeding against [Neshewat] in Dutchess Count Surrogate's Court to recover the sum of $12,000 in April, 1995 was dismissed.

"A malicious prosecution is one that is begun in malice, without probable cause to believe it can succeed, and which finally ends in failure." *Munoz v. City of N.Y.*, 18 NY2d 6, 9. "The essence of malicious prosecution is the perversion of proper legal procedures." *Broughton v. State of N.Y.,* 37 NY2d 451, 457. . . .

All of the elements of malicious prosecution are present. Paternity of the criminal charges filed in Michigan against [Neshewat] rests solely with [Salem]. [Neshewat] was arrested. The proceeding was ultimately dismissed. . . . **[Salem] could have advanced its outright dismissal if he had notified the Michigan authorities that his [New York] Supreme Court action commenced in November, 1990 was dismissed in October, 1995. The Supreme Court specifically found that "Michael Neshewat did not steal the New York State title to Maurice J. Neshewat [Salem's], 1989 Mercedes Benz and that . . . Michael Neshewat did not forge [Salem]'s signature onto the title of the Mercedes Benz and did not fraudulently transfer ownership to himself of the 1989 Mercedes Benz. . ."**[8] [Neshewat] must now defend himself in yet another lawsuit instituted by [Salem] in the District Court

---

[8] The Court notes that none of these facts exonerating Michael Neshewat were ever disclosed to this Court when it entered its decision in November 1997, either. *See* 11/7/97 Opinion and Order, pp. 6-10.

12

for the Southern District [of New York]. The stench of malice is self-evident. *See* Plaintiff's Ex. C, 5/7/99 Decision and Order, pp. 5-7.

The Bankruptcy Court similarly found the judgment against Salem non-dischargeable under 11 U.S.C. § 523(a)(6) because it found, after conducting its own trial, that Salem's conduct in connection with the filing and prosecution of numerous actions -- not just his testimony in the Michigan preliminary examination -- to be "willful and malicious":

> Neshewat proved by a preponderance of the evidence that Salem willfully and maliciously injured him. Specifically, Neshewat proved that Salem injured him by participating in criminal complaints, civil suits and prosecution against Neshewat including two state court actions, at least one proceeding in surrogate's court, voluntary testimony in a Michigan federal court preliminary hearing and over 100 phone calls to the Town of East Fishkill Police Department lodging complaints against Neshewat. In one such phone call, Salem claimed that Neshewat improperly obtained title to Salem's 1987 Cadillac Catalca by forging Salem's signature when in fact Salem later admitted that it was likely he signed the transfer document himself. Salem also admitted he knew that an accusation such as this could result in jail time and the loss of Neshewat's medical license. In addition, Salem was arrested for falsely reporting this incident. Salem filed a similar complaint against Neshewat claiming that Neshewat forged Salem's signature on the transfer of a 1989 Mercedes Benz ("Mercedes"). In fact, Salem brought a lawsuit in the Dutchess County Supreme Court in 1990 claiming that Neshewat fraudulently obtained title by forging Salem's signature on a document transferring title to Neshewat. Judge Beisner dismissed the claim against Neshewat stating that Neshewat did not forge the document, nor fraudulently transfer title.
>
> In 1990, Neshewat reported that the Mercedes had been stolen. In 1993, it was found to be in the possession of Salem's wife. Neshewat was arrested and prosecuted in Michigan for making a false police report and for insurance fraud. Salem traveled voluntarily to Michigan to testify that Neshewat fraudulently obtained title to the Mercedes when it had already been found by a New York state court that Neshewat never forged the title to the document or fraudulently transferred title to him. . . .
>
> In sum, Salem knew that Neshewat was the rightful owner of the

13

> Mercedes but continued to bring and prosecute lawsuits designed to get back the Mercedes. The continuous litigation caused Neshewat to spend substantial sums on attorney's fees, court fees and travel expenses; in addition, he lost substantial income. It is therefore clear that Salem's debt arose from willful and malicious injury and is consequently nondischargeable.

*In re Salem*, *supra*, 290 B.R. at 485-86 (record citations omitted).

The foregoing makes clear that, contrary to Plaintiff's assertions, the judgment giving rise to the sheriff's sale at issue was not solely predicated upon Salem's testimony in the Michigan insurance fraud matter.

Turning then to the merits of Plaintiff's motion, the Court finds that Plaintiff is not entitled to the injunctive relief he seeks.

A.  THE INJUNCTIVE RELIEF REQUESTED BY PLAINTIFF WITH REGARD TO THE SHERIFF'S SALE IS BARRED BY THE *ROOKER-FELDMAN* DOCTRINE

Under the United States Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), and their progeny, this Court lacks jurisdiction to entertain Plaintiff's action for injunctive relief to bar the execution of the New York judgment.

The Supreme Court's decisions in *Rooker, supra*, and *Feldman, supra*, taken together, stand for the proposition that the inferior federal courts lack the authority to perform, in effect, what would be an appellate review of state court decisions. This now well-settled rule has become known as the *Rooker-Feldman* doctrine.

In *Rooker*, the plaintiffs brought an action in a federal district court claiming that an

Indiana state statute violated their federal constitutional rights, even though the issues which the plaintiffs raised had been decided by an Indiana Circuit Court and affirmed by the Indiana Supreme Court. In affirming the federal district court's dismissal of the action based on lack of jurisdiction, the United States Supreme Court stated that the state courts had jurisdiction to determine the constitutional validity of the state's statutes and, until reversed or modified by a state court, the state judgment would be an effective and conclusive adjudication, even before an inferior federal court. 263 U.S. at 415. In particular, the Court held that the inferior federal courts lacked jurisdiction to entertain a proceeding to reverse or modify a state court judgment since it would be an exercise of appellate jurisdiction and the jurisdiction possessed by the federal district court is strictly original. *Id.* at 414-17.

In *Feldman*, the plaintiff submitted to the District of Columbia Court of Appeals a petition for admission to the bar of the District of Columbia after he had been refused the right to take the bar examination because he had not graduated from an approved law school, as required by the District of Columbia rules. After the District of Columbia Court of Appeals denied the plaintiff's petition, he brought an action in a federal district court alleging that he had a right to take the bar exam pursuant to the Fifth Amendment, and that, denying him this right, due to his law school's lack of accreditation, was a violation of the Fifth Amendment and the Sherman Act. In finding that the federal district court had no jurisdiction over this matter, the U.S. Supreme Court held that plaintiffs seeking review of state court decisions must first exhaust the appellate review available to them at the state court level and then, they may appeal only to the United States Supreme Court. *Feldman*,

15

460 U.S. at 486.

The Supreme Court recently re-affirmed and clarified the contours of the *Rooker-Feldman* doctrine in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, ___ U.S. ___, 125 S.Ct. 1517, 2005 WL 711586 (Mar. 30, 2005):

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: **cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.**

2005 WL 711586.

The Court explained that, in such a case,

> [The U. S. Supreme Court's] appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority, e.g., § 1330 (suits against foreign states), § 1331 (federal question) and § 1332 (diversity).

*Id.*

Application of the *Rooker-Feldman* doctrine here precludes this Court from exercising jurisdiction over Plaintiff's action to enjoin the execution of the New York judgment, i.e., the sheriff's sale of the property at 7 Gellatly Drive. *Rooker-Feldman* renders this Court without authority to undo the New York judgment which is what would be required to block the execution of that judgment.[9] Accordingly, Plaintiff's Complaint claims for injunctive

---

[9] Furthermore, as Plaintiff himself admits, the New York courts found him liable to his brother for abuse of process and malicious prosecution *under New York* (and Second Circuit) law. Plaintiff seems to overlook the fact that this Court's ruling in 1997 gave preclusive effect to the pretrial diversion agreement entered into by his brother

relief with respect to the execution of the New York Judgment and the sheriff's sale of the New York property will be dismissed for lack of jurisdiction.

B.  PLAINTIFF'S CLAIMS AGAINST DEFENDANT WORTHY ARE SIMILARLY BARRED                                                                                                           .

In his Complaint, Salem also requests that the Court <u>order</u> Wayne County Prosecutor Kym Worthy to deem Neshewat's entry into the pretrial diversion program null and void,[10] and not only prosecute Neshewat for the same criminal charges that he entered into the diversion program but also obtain a conviction for those charges in a Michigan state court. Salem also alleges that Worthy is obligated to pursue criminal charges against Neshewat based upon a theory of promissory estoppel. Salem's theory of liability and his requests for relief have no basis in law.

First of all, Defendant Worthy is cloaked with absolute prosecutorial immunity. *See Imbler v. Pachtman*, 424 U.S. 409, 420, 430, 96 S.Ct. 984 (1976). Absolute immunity is accorded to prosecutors when the prosecutorial activity in question is "intimately associated

---

barred his brother's malicious prosecution claim under *Michigan* and *Sixth Circuit* law. Plaintiff now wants the Court to rule that when a Michigan criminal defendant, such as Plaintiff's brother, Defendant Michael Neshewat, uses a Michigan pretrial diversion agreement "as a sword and a shield" by relying upon the agreement to proclaim his innocence in a subsequent civil suit for damages, the diversion agreement is rendered null and void. Plaintiff somehow believes that such a ruling would compel the New York court to reverse its judgment. However, it is fundamental that a New York court applying New York law is not bound by a ruling by a Michigan court applying Michigan law. It necessarily follows then that this Court cannot order the New York court to adhere to its rulings.

[10]  According to Defendant Worthy's Response Brief, Neshewat entered into the diversion program approximately 10 years ago and has successfully completed it.

with the judicial phases of the criminal process." *Id.* Here, all of Plaintiff's claims against Defendant Worthy concern matters which were "intimately associated with the judicial phases of the criminal process."

Furthermore, it is within the Prosecutor's discretion to initiate criminal charges. A court cannot order the Prosecutor to pursue criminal charges. *See Genesee Prosecutor v. Genesee Circuit Court Judge*, 386 Mich. 672, 683, 194 N.W.2d (1972); *see also In re Special Prosecutor*, 122 Mich. App. 632, 636, 332 N.W.2d 550 (1983) (county prosecutor is a constitutional officer with discretion to decide whether to initiate criminal charges).

To the extent that Salem argues that Neshewat's entry into the diversion program is a contract, such a contract would be between the State and Neshewat, <u>not</u> the State and Salem. Salem is not even a third-party beneficiary to the alleged contract. Therefore, he lacks standing to challenge Neshewat's entry into the diversion program.

Similarly, Plaintiff's claim of "promissory estoppel" against the Prosecutor is without merit. The elements of promissory estoppel are (1) a promise; (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee; and (3) that in fact produced reliance or forebearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided. *Industrial Maxifreight Services, LLC v. Tenneco*, 182 F. Supp. 2d 630 (E.D. Mich. 2002), citing *Novak v. National Mutual Ins. Co.*, 235 Mich. App. 675, 686-687, 599 N.W.2d 546 (1999). The doctrine of promissory estoppel is cautiously applied. *Tenneco, supra*, citing *Marrero v. McDonnell Douglas Capital Corp.*, 200 Mich. App. 438, 442, 502 N.W.2d 275, 278 (1993).

18

In this case, Plaintiff Salem cannot prove an enforceable promise. As indicated above, it is within the prosecutor's discretion to initiate and pursue charges. Salem does not control the case and the prosecutor does not make enforceable promises of prosecution to witnesses.

The foregoing demonstrates that Plaintiff has failed to state any legally cognizable claim against Defendant Worthy. Therefore, Plaintiff's Complaint claims against Defendant Worthy will be dismissed in their entirety.

## CONCLUSION

For all of the reasons stated above,

IT IS HEREBY ORDERED that Plaintiff's Motion for Preliminary Injunction is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Complaint be, and hereby is, dismissed in its entirety, with prejudice.


                        s/Gerald E. Rosen
                        Gerald E. Rosen
                        United States District Judge

Dated: May 11, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 11, 2005, by electronic and/or ordinary mail.

                        s/LaShawn R. Saulsberry
                        Case Manager